IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

Charles Fenner

Plaintiff

v.

Baltimore Police Department et al.

City Union of Baltimore Local 800, AFT, AFL – CIO

Mayor & City Council

Defendants

Civil Case No:

## FACTUAL ALLEGATIONS

1. Plaintiff Charles Fenner is a civilian Emergency Police Dispatcher employed by the Baltimore Police Department (BPD), classified as a non-exempt employee under the Fair Labor Standards Act (FLSA) and covered by Bargaining Unit I. His employment is governed by a collective bargaining agreements negotiated by the City Union of Baltimore Local 800, AFT, AFL – CIO ("the Union").

2. Plaintiff's employment is governed by a series of Memoranda of Understanding (MOUs) negotiated between the City and the Union, including agreements for Fy 2020-2021 (Exhibit A1), FY 2022-2023 (Exhibit A2), and FY 2024-2025 (Exhibit A3), as well as the BPD Payroll Manual (Exhibit B) and Addendum R Workday-Related Payroll Matters (Exhibit A4).

3. Plaintiff's and other similarly situated employees wage entitlements are governed by both the applicable Memoranda of Understanding (MOUs) negotiated between the City and the Union- including agreements for FY 2020-2021 (Exhibit A1), FY 2022-2023 (Exhibit A2), and FY 2024-2025 (Exhibit A3), these agreements establish Plaintiffs wage entitlements including hourly rate (Article 11), hours of work (Article 17), overtime (Article 18), vacation leave (Article 20), holidays (Article 23) and applicable sub sections- and by the Baltimore Police Department Payroll Manual (Exhibit B), which applies to all BPD employees regardless of bargaining unit. The Payroll Manual sets fourth policies on time entry, overtime, and other aspects of payroll oversight, including provisions in Sections 2.1-2.14, 2.2.2-2.2.2.4 and 3.1-3.1.3.

4. In 2021, Plaintiff began raising concerns about systemic payroll errors, including misapplication of the hourly rate divisor, undervaluation of vacation days, exclusion of night differentials from overtime, and denial of compensatory time. These concerns were consistent with violations of the Fair Labor Standards Act (FLSA).

5. Emergency Dispatchers must report early for operational briefings, log into dispatch systems, and prepare workstations. Plaintiff's shift runs from 10:00 p.m. to 6:00 a.m., with other voluntary overtime often worked. Despite discipline for even one minute of tardiness, Defendants refuse to compensate for early arrivals or late departures. These pre- and post-shift activities are integral and indispensable under 29 C.F.R. § 785.24 yet remain uncompensated or denied when requested.

6. Defendants denied Plaintiff proper compensatory time (comp time) in lieu of overtime pay, despite explicit MOU language and FLSA guidance under 29 U.S.C § 207 (o).

2

Defendants did not credit, track, or pay out comp time balances, resulting in lost wages and benefits.

7. In 2023 and 2024, Plaintiff submitted multiple written requests for payroll correction thru established procedure and requested payroll audits and payroll records under internal policy. (Exhibit D)., These requests sought documentation of wage calculations, leave valuations, and differentials-pay structures. They were either ignored or incompletely answered, obstructing Plaintiff's ability to verify and challenge discrepancies.

8. After repeated complaints to payroll, union representatives and external agencies, Plaintiff experienced retaliation- including hostile supervisory treatment, exclusions from meetings, denial of trainings and overtime-in violation of 29 U.S.C § 215 (a)(3) and parallel Maryland labor protections.

9. Since at least December 2020, these systemic payroll violations have spanned multiple fiscal years and persisted despite repeated notice to both employer and the Union.

10. Plaintiff provided detailed notice to dozens of BPD supervisors, payroll and finance officials (including Danielle Braxton, Chenele Bellamy, Paula Willaims, Brian Davis, and Alisha McKnight), Comptroller staff (including Erika Mc Clammy and Josh Pasch), union leaders (including Donna Price, Antoinette Ryan-Johnson, and Deborah Moore), and the U.S. Department of Labor. All acknowledgements failed to produce corrective action. (Exhibit E). The U.S Department of Labor, however, did issue Plaintiff a noncompliance report. (Exhibit C).

11. In October 2022, Plaintiff submitted a formal grievance under Article 11, 17, 18 of the FY 2022-2023 MOU, citing violations and breach of contract. (Exhibit F).

12. Plaintiff escalated the issue to the Baltimore City Comptroller's Office, although the Comptroller referred the matter to BPD HR and payroll, no corrective action followed.

13. Plaintiff submitted multiple internal payroll correction forms- including manual time entries, workday pay requests, and Form 95s (e.g., Tracking # 21-0306)- yet remains unpaid for significant hours. (Exhibit E).

14. In April 2024, Plaintiff submitted a formal payroll audit request to the Department of Finance, attaching all three MOUs and citing three years of miscalculations. The Department deferred to agency HR due to scope, and the matter remains unresolved. (Exhibit G).

15. In April 2025, Plaintiff filed a comprehensive grievance detailing FLSA violations, payroll-policy breaches, and systemic wage theft across all shifts. In May 2025, Plaintiff was wrongfully accused of time fraud for early clock-ins- (union labor relations specialist handling grievance was party to via three-way phone conference)-mandated but unpaid- causing reputational harm and constituting further retaliation. (Exhibits H & I).

16. Defendants continue to deny compensation for pre-shift work, early relief of prior shifts, and overtime due to short staffing, in flat violation of both the FLSA and the BPD Payroll Manual. (Exhibit B).

17. Plaintiff has exhausted all internal and most external remedies- including union outreach, departmental escalation, and formal audit request--yet Defendants' willful neglect persists.

18. These violations affect not only Plaintiff but all Emergency Dispatchers and similarly situated Unit I employees, reinforcing the systemic nature of the harm and the need for injunctive relief.

19. In February 2021, around the same time Plaintiff and more than half of the city employees raised concerns regarding wages and working conditions the Coalition of Baltimore City Unions- including the City Union of Baltimore-issued a Workday Baltimore Position Statement documenting widespread payroll errors (missed overtime, omitted shift differentials, incorrect comp time) and asserting MERO/MOU violations. Despite this union-wide awareness, no remedial action was taken for Unit I dispatchers. (Exhibit J).

20. Plaintiff notes that virtually identical wage violations survived dismissal in Butler et al. v. Baltimore Police Department, Case No. 1:16-cv-03309ELH (D. Md. 2016), where on-duty officers alleged improper overtime calculations, exclusion of shift differentials, and misapplication of hours worked in violation of the FLSA. The court denied the motion to dismiss, holding that such miscalculations-if proven- are actionable under federal law. Plaintiff's allegations mirror the structural deficiencies in Butler, reinforcing both the plausibility and systemic nature of the harm.

21. Plaintiff further observes that in Taylor v. Mayor and city Council of Baltimore, Civil Action No. L-96-855 (D. Md. 1996), the plaintiff alleged retaliatory conduct and discriminatory treatment by municipal actors, exposing institutional accountability failures and the ineffectiveness of internal grievance mechanisms. Plaintiff's own experience-where union procedures and departmental escalations repeatedly failed- echoes this historical pattern, demonstrating that federal intervention is often the only remedy for ongoing wage-law violations and retaliation.

22. In May 2025, Plaintiff followed up with the Union President, reiterating the need for action and referencing prior grievances. (Exhibit K)

23. In June 2025, Plaintiff served a final demand letter on the Union President, outlining systemic wage theft, FLSA violations, and contract breaches. The Union failed to respond. Plaintiff now pursues all available legal remedies. (Exhibit L).

24. Plaintiff was scheduled to work on designated holidays, including Christmas, and received holiday premium pay. However, Defendants failed to provide a day in lieu or offer the compensation options required under the MOUs. (Exhibit A3)

25. In response to grievance #14-25, the Union stated that no violation of the MOU or Administrative Manual occurred and declined to advance the grievance. This denial failed to consider Plaintiff's non-exempt status and the applicability of federal wage law, including 29 C.F.R § 785.11 -785.13. (Exhibit M, K)

26. Prior to The final demand letter, the Union representative referred Plaintiff's grievance to the Union President, acknowledging the complexity and seriousness of the claims. This referral placed the Union's highest officer on notice of systemic wage violations and triggered a duty to act, (Exhibit H, K).

27. Plaintiff received a written denial of overtime compensation for pre-shift work, citing lack of authorization. This denial contradicts FLSA regulations requiring payment for work suffered or permitted and reflects a pattern of misapplication of wage law. (Exhibit N).

28. The Union previously advocated for 10-month employees experiencing similar payroll discrepancies, including missed overtime, miscalculated leave, and undervalued shift differentials. These efforts demonstrate the Union's awareness of systemic wage violations. Despite Plaintiff raising identical issues-documented through grievances, audit

requests, and correspondence-the Union failed to act on behalf of Unit I dispatchers. This selective representation reflects arbitrary and discriminatory treatment. (Exhibit O).

29. Plaintiff seeks unpaid wages, liquidated damages, declaratory and injunctive relief, and attorneys' fees under FLSA and Maryland wage law. Plaintiff also seeks equitable relief for breach of contract and breach of duty of fair representation.

30. Plaintiff has exhausted all internal and administrative remedies, including multiple grievances, audit requests, and direct correspondence with union and city officials. Despite these efforts, Defendants failed to correct the violations or engage in good faith resolution. Plaintiff now seeks judicial relief to enforce rights under federal and state law. This action is timely, is the proper venue and supported by documented harm and statutory authority.

31. On January 17, 2024, the Maryland Office of Legislative Audits issued a performance audit of the Baltimore Police Department's payroll, overtime, and timekeeping practices. The audit confirmed systemic failures in oversight, policy enforcement, and payroll compliance during the period relevant to Plaintiff's claims. Specifically, the audit found that supervisory personnel failed to monitor overtime, that 71% of overtime requests were approved retroactively, and that $16.7 million in overtime was not properly categorized. It also documented 268 officers violating the 32-hour voluntary overtime cap a total of 693 times. With no disciplinary action taken. These findings corroborate Plaintiff's allegations of wage misclassification, denial of earned compensation, and lack of internal controls. (See Exhibit P).

32. Plaintiff is a nonexempt civilian employee of the Baltimore Police Department, subject to the same payroll systems, timekeeping policies, and wage classifications as sworn

officers. While the January 2024 audit focused primarily on sworn officer overtime, it confirmed systemic payroll failures including lack of oversight, retroactive approvals, and uncategorized overtime that equally affected nonexempt civilian employees. Plaintiff's wage violations occurred during the same audit period and under the same Workday implementation. The audit's omission of civilian harm underscores the need for judicial review and equitable relief for similarly situated employees excluded from internal correction efforts. (See Exhibit P).

33. The audit's methodology included direct access to Workday, review of payroll and scheduling records, and transaction testing based on risk and significance. Although the audit focused on sworn officers, the systems reviewed including Workday, payroll approvals, and overtime categorization apply equally to nonexempt civilian employees. The audit's conclusions confirm systemic failures in oversight, policy enforcement, and payroll integrity that directly impacted Plaintiff and similarly situated employees. (See Exhibit P).

34. According to a Resolution Bill presented to the Baltimore City Council and a February 2021 briefing by the Baltimore City Office of Information and Technology (BCIT), the rollout of Workday was flawed from the outset, resulting in hundreds of city employees being underpaid or not paid entirely. BPD management acknowledged ongoing payroll issues as of August 2022, which were reported to BCIT for resolution. These admissions confirm that Plaintiff's wage violations occurred within a broader context of known system failures, further supporting Plaintiff's claims of misclassification, denial of earned compensation, and retaliatory exclusion from corrective processes. (See Exhibit P).

**Count I – Violation of the Fair Labor Standards Act (FLSA)**

**(29 U.S.C § 207, § 215 (a)(3)**

Plaintiff realleges and incorporates by reference ¶¶ 1-28, 31-34 as if fully set forth herein.

35. Plaintiff is a non-exempt employee under the FLSA, entitled to overtime compensation, accurate timekeeping, and protection from retaliation. (¶1)

36. Defendants failed to compensate Plaintiff for pre- and post-shift work, including early reporting, system logins, and workstation setup activities integral and indispensable under 29 C.F.R § 785.24. These duties were performed regularly, and Plaintiff was disciplined for tardiness, yet denied pay for early arrivals. (¶5, ¶16 Exhibit B, N)

37. Defendants denied Plaintiff proper compensatory time in lieu of overtime pay, failed to credit or track comp time balances, and excluded night differentials from overtime calculations. These practices violate 29 U.S.C § 207(a) and § 207(o). (¶4, ¶6, ¶ 13; Exhibits A3, B, Q).

38. Plaintiff submitted multiple payroll correction forms and audit requests, which were ignored or deflected. These denials obstructed Plaintiff's ability to verify and challenge wage discrepancies. (¶7, ¶ 14, ¶ 27; Exhibits D, G, N).

39. Plaintiff worked on designated holidays and received holiday premium pay but was denied a day in lieu or the compensation options required under the Police Department Policy, and the MOU. This misapplication violates FLSA standards and contradicts governing payroll policy. (¶ 24, Exhibit A3).

40. Plaintiff engaged in protected activity by filing grievances, submitting audit request, and contacting oversight agencies including the U.S. Department of Labor. In response, Plaintiff experienced and continues to experience retaliation including false accusations

of time fraud, denial of training and overtime, excessive monitoring, targeted disciplinary and time keeping enforcement and reputational harm. (¶8, ¶15, Exhibits H-I).

41. Defendants' violations were willful and repeated, spanning multiple fiscal years and persisting despite formal notice. (¶9, ¶10, ¶28).

42. Defendant did not compensate Plaintiff for overtime hours worked in violation of 29 U.S.C, § 207 (a), despite Plaintiff's status as a nonexempt employee entitled to such compensation. As documented in Exhibit P, the Maryland Office of Legislative Audits confirmed systemic payroll failures within BPD during the relevant period, including retroactive approvals, uncategorized overtime, and lack of oversight. These failures occurred under the same Workday system and payroll policies that governed Plaintiff's employment, Defendants' conduct was willful and not in good faith, entitling Plaintiff to liquidated damages under 29 U.S.C § 216(b).

Relief Requested:

Plaintiff seeks unpaid wages, liquidated damages under 29 U.S.C § 216(b), declaratory and injunctive relief, and attorney's fees.

## Count II - Breach of Contract

### (Violation of Memoranda of Understanding and BPD Payroll Manual)

43. Plaintiff realleges and incorporates by reference ¶¶ 1-28 as if fully set forth herein.

44. Plaintiff's wage entitlement- including hourly rate, overtime, vacation leave, holidays, and compensatory time--are governed by binding memoranda of Understanding (MOUs) negotiated between the city and the Union, specifically for FY 2020-2021, FY 2022-2023 and FY 2024-2025. (¶2-3, Exhibits A1-A3).

45. Defendants breached these agreements by misapplying the hourly rate divisor, undervaluing vacation leave, excluding night differentials from overtime, and denying compensatory time. These actions contradict Articles 11, 17, 18, 20, and 23 with relevant subsections of the MOUs and Section 2.2.2-2.2.2.4 and 3.1-3.1.3 of the Payroll Manual. (¶3, ¶7, ¶14, Exhibits A2-A3, B).

46. Plaintiff submitted multiple payroll correction forms, audit requests, and grievances to address these discrepancies, including formal filings under Article 11, 17, and 18. Defendants failed to take corrective action. (¶7, ¶11, ¶14, Exhibits D, E, F, G).

47. Plaintiff worked on designated holidays and received premium pay but was denied a day in lieu or the compensation options required under MOUs/BPD policy. (Exhibits A3, 23 D 1-2. This misapplication violates both the MOUs and the Payroll Manal. (¶24).

48. Plaintiff's grievance *14-25 was denied by the Union, which failed to consider Plaintiff's non-exempt status and the applicability of federal wage law. The denial obstructed contractual enforcement. (¶25, Exhibit M, K)

49. Defendants' failure to honor these contractual provisions resulted in lost wages, reputational harm, and denial of earned benefits.

50. Plaintiff has exhausted all internal remedies, including multiple grievances, payroll correction forms, and audit requests. Defendants failed to resolve the violations or engage in good faith resolution. (¶30).

51. Plaintiff seeks damages for breach of contract, enforcement of wage provisions under the MOUs and Payroll Manual, declaratory relief, and any other equitable relief the Court deems just and proper.

### Count III -- Breach of Duty of Fair Representation

**(Against the City Union of Baltimore)**

52. Plaintiff realleges and incorporates by reference ¶¶1,3, 10-11, 15, 21-23, 25-28, 31-34 as if fully set forth herein.

53. The City Union of Baltimore (CUB) is the exclusive bargaining representative for Plaintiff's bargaining unit and is responsible for enforcing the terms of the Memoranda of Understanding and protecting members from wage violations, retaliation, and inequitable treatment. (¶1, ¶3).

54. Plaintiff submitted multiple grievances and payroll correction requests to CUB, including formal filings under Articles 11, 17, 18 and relevant sections of the MOUs. These filings documented misapplication of wage formulas, denial of comp time, and exclusion from overtime eligibility. (¶10-11, ¶13-14, Exhibits D, E, F, G).

55. Despite receiving detailed documentation and repeated requests for intervention, CUB failed to investigate, file grievances, or pursue arbitration on Plaintiff behalf. (¶15, ¶22-23).

56. Plaintiff escalated concerns to the Union President and provided evidence of identical wage violations previously addresses for other employees, including 10-month employees. (¶28, Exhibit O).

57. CUB's refusal to act was arbitrary, discriminatory, and in bad faith. The Union selectively enforced wage protections for certain members while ignoring Plaintiff's identical claims. (¶21, ¶28).

58. Plaintiff was denied access to grievance procedures, excluded from union-led wage recovery efforts, and left without representation in matters affecting earned compensation and contractual rights. (¶25, ¶26).

59. Plaintiff has exhausted all internal union remedies and now seeks judicial relief to enforce the Union's duty of fair representation. (¶30).

60. The Union breached its duty of fair representation by not advocating for Plaintiff and similarly situated civilian employees, despite straightforward evidence of payroll mismanagement and wage violations. As shown in Exhibit P, BPD and city officials were aware of widespread payroll failures during the Workday rollout and audit period. The Union's silence and refusal to pursue corrective action for civilian employees while others received relief constitutes arbitrary and discriminatory conduct in violation of its statutory obligations.

61. Plaintiffs seek equitable relief, declaratory judgment, and any damage resulting from Union's breach of duty under federal and state labor law.

62. Courts have recognized that public sector unions may be held liable for breach of the duty of fair representation when they act arbitrarily, discriminatorily, or in bad faith. (See McFetridge v. AFSCME Council 13 (Pa. Comm w. Ct); see also Grande v. Hartford Federation of Teachers. (Conn. Super. Ct).

### Count IV – Retaliation

**(Violation of the Fair Labor Standards Act, Maryland Wage Law, and Public Policy)**

63. Plaintiff realleges and incorporates by reference ¶¶1, 8, 10. 13-16, 22-23, 26, 30-34 as if fully set forth herein.

64. Plaintiff engaged in protected activity under the Fair labor Standards Act (29 U.S.C § 215(a)(3) and Maryland wage law by submitting payroll correction forms, filing grievances, requesting audits, and contacting oversight agencies including the U.S. Department of Labor. (¶8, ¶13-14).

13

65. Plaintiff also raised concerns internally about wage miscalculations, comp time denials, lunch denials, holiday pay violations and sought union intervention to enforce contractual protections. (¶10, ¶15).

66. In response to these protected activities, Defendants retaliated against Plaintiff by falsely accusing him of time fraud, denying access to training opportunities, excluding him from overtime assignments, and undermining his professional reputation. (¶15, ¶21, 23).

67. Plaintiff was subjected to heightened scrutiny, negative work reviews, selective disciplinary and timekeeping policies, which caused reputational harm within the department. These actions were intended to chill plaintiff's advocacy and deter further protected activity. (¶26).

68. Defendants' retaliatory conduct violates 29 U.S.C § 215 (a)(3), Maryland wage law protections against retaliation, and the public policy of the State of Maryland favoring transparency fair compensation, and whistleblower protections. (¶30). As documented in Exhibit P, BPD management acknowledged ongoing payroll issues as of August 2022 and reported them to BCIT for resolution. The City's awareness of these failures, coupled with its selective silence toward Plaintiff's claims, supports the finding of retaliatory intent and exclusion.

69. Plaintiff seeks compensatory damages, injunctive relief, declaratory judgment, and any other relief the Court considers just and proper.

### Count V – Violation of Maryland Wage payment and Collection Law
### (Md. Code, Labor & Employment ¶¶ 3-501 et seq.)

70. Plaintiff realleges and incorporates by reference ¶¶1-7, 10. 13-14, 6, 24-27, and 30-34 as if fully set forth herein.

71. Under Maryland law, employers must pay employees all wages earned for work performed, including overtime, holiday pay, and compensatory time, in accordance with agreed terms and applicable law. (Md. Code, LE § 3-502).

72. Plaintiff is a nonexempt employee entitled to hourly wages, overtime compensation, and premium pay for holiday work under governing MOUs and payroll policies. (¶1-3, ¶4).

73. Defendants did not pay plaintiff for pre- and post-shift work, denied proper compensatory time, miscalculated hourly rates, and excluded night differentials from overtime calculations. These actions resulted in unpaid earned wages. (¶4, ¶6, ¶13, Exhibits A2-A3, B).

74. Plaintiff worked on designated holidays and received premium pay but was denied a day in lieu or the compensation options required under Police Department policy and MOUs. This constitutes a failure to pay earned wages. (¶24).

75. Plaintiff submitted payroll correction forms and audit requests to recover unpaid wages. Defendants failed to take corrective action or provide a good-faith explanation. (¶7, ¶14, ¶27, Exhibits D, E, G, N).

76. Defendants' failure to pay earned wages was not the result of a bona fide dispute and constitutes a violation of Md. Code, LE § 3-507.2.

77. Plaintiff seeks treble damages, costs, and attorneys' fees under Maryland wage law, as well as declaratory and injunctive relief.

**Prayer for Relief**

Wherefore, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

1. Unpaid Wages

As award of unpaid overtime, holiday pay, compensatory time, vacation time and other earned wages withheld in violation of the Fair labor Standards Act (FLSA), Maryland Wage payment and Collection Law, and governing contractual provisions.

2. Liquidated Damages

   An award of liquidated damages under 29 U.S.C § 216(b) for willful violations of the FLSA.

3. Treble Damages

   An award of treble damages under Md. Code, Labor & Employment § 3-507.2 for failure to pay earned wages without bona fide dispute.

4. Equitable Relief

   Injunctive relief requiring the Defendants to correct payroll practices, restore forfeited comp time balances, and follow wage provisions under the MOUs and Payroll Manual.

5. Declaratory Judgment

   A declaration that Defendants violated Plaintiff's right under federal and state wage laws, breached contractual obligations, and failed to provide fair representation.

6. Retaliation Redress

   Compensatory damages for reputational harm, lost opportunities, and emotional distress resulting from retaliation in violation of 29 U. S. C § 215(a)(3) and Maryland public policy.

7. Attorney's Fees and Costs

      An award of reasonable attorney's fees, costs, and expenses incurred in prosecuting this action, including expert witness fees, and litigation support.

8. Prejudgment and Post judgment Interest

    On all monetary awards to the fullest extent allowed by law.

9. Any Other Relief

    Such other and further relief as the Court considers just and proper.

Respectfully submitted,

*Charles Fenner 9-22-2025*

Charles Fenner

Pro Se Plaintiff

3308 Fairview Ave B

Baltimore, MD. 21216

443-310-3342

Mr.lamont.f@gmail.com

Date: September 21, 2025