**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **CHARLES FENNER,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-25-3134** |
| **v.** | * | |
| | * | |
| **BALTIMORE POLICE DEPARTMENT, *et al.*,** | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * *

# MEMORANDUM OPINION

Self-represented plaintiff Charles Fenner ("Plaintiff") initiated this civil action against the Baltimore Police Department ("BPD") and Mayor and City Council of Baltimore (the "City") (collectively, "City Defendants"), as well as the City Union of Baltimore, Local 800, AFT, AFL-CIO ("CUB"). He alleges violations of the federal and state wage-and-hour laws, breach of contract, breach of the duty of fair representation, and retaliation.[1] ECF No. 1-1, ¶¶ 35–77; ECF No. 1-3. Plaintiff seeks unpaid wages, liquidated and treble damages, declaratory and injunctive relief, and attorneys' fees. ECF No. 1-1 at 15–16, ¶ 29. There are several pending motions in this matter, including motions to dismiss filed by City Defendants and CUB. A hearing is not necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the Court shall grant the defendants' motions to dismiss and dismiss the Complaint.[2]

[1] This action follows two similar actions Plaintiff litigated in this Court, which were dismissed without prejudice: *Fenner, et al. v. Mayor & City Council of Baltimore*, No. 1:21-cv-02646-DLB, 2022 WL 2209064 (D. Md. June 21, 2022), and *Fenner, et al. v. Baltimore Police Department, et al.*, No. 1:24-cv-02714-JRR (D. Md. Dec., 17, 2024).

[2] Plaintiff also has several motions pending, which are addressed in Part III *infra*.

## I. FACTUAL BACKGROUND

Plaintiff is an Emergency Police Dispatcher employed by BPD and a member of Bargaining Unit I. ECF No. 1-1, ¶ 1. CUB is the exclusive bargaining representative of this unit. *Id.* ¶ 53. Plaintiff's employment is governed by several Memoranda of Understanding ("MOU") entered into by the City and CUB. *Id.* ¶¶ 2–3; *see also* ECF Nos. 1-6 (Pl. Ex. A1), 1-7 (Pl. Ex. A2), 1-8 (Pl. Ex. A3), 1-9 (Pl. Ex. A4); 18-2 (full MOU for FY 2024–25). These memoranda establish Plaintiff's wage entitlements, including hourly rate, hours of work, overtime, vacation leave, and holidays. ECF No. 1-1, ¶ 3. Plaintiff is also subject to the BPD Payroll Manual, "which applies to all BPD employees regardless of bargaining unit." *Id.*; *see also* ECF No. 1-10 (Pl. Ex. B). The Manual "sets forth policies on time entry, overtime, and other aspects of payroll oversight[.]" ECF No. 1-1, ¶ 3. Lastly, Plaintiff is a nonexempt civilian employee and is therefore "subject to the same payroll systems, timekeeping policies, and wage classifications as sworn [BPD] officers." *Id.* ¶ 32.

Plaintiff's shift is from 10:00 p.m. to 6:00 a.m. *Id.* ¶ 5. But Plaintiff has frequently worked outside of his shift due to the nature of his work, which involves "report[ing] early for operational briefings, log[ging] into dispatch systems, and prepar[ing] workstations." *Id.* City Defendants have declined to compensate Plaintiff for early arrivals or late departures and have "denied Plaintiff proper compensatory time . . . in lieu of overtime pay, despite explicit MOU language" and guidance from the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* *Id.* ¶ 6. Because City Defendants fail to "credit, track, or pay out comp[ensatory] time balances," Plaintiff has suffered lost wages and benefits. *Id.* These systemic payroll violations have been ongoing since at least December 2020. *Id.* ¶ 9.

In 2021, Plaintiff "rais[ed] concerns about . . . [City Defendants'] denial of compensatory time[]" in addition to other systemic payroll errors. *Id.* ¶ 4; *see also* ECF No. 1-13 (Pl. Ex. E). On February 1, 2021, around the same time Plaintiff raised concerns regarding his wages, the Coalition of Baltimore City Unions—including CUB—issued a position statement about Workday, a payroll management service and the City's chosen platform to replace its former human resources and payroll information systems. ECF No. 1-1, ¶ 19; ECF No. 1-24 (Pl. Ex. J). The statement "document[ed] widespread payroll errors [as a result of the transition to Workday] . . . and assert[ed] [Municipal Employee Relations Ordinance ('MERO')]/MOU violations." ECF No. 1-1, ¶ 19. Despite this statement, no remedial action was taken on behalf of dispatchers in Plaintiff's bargaining unit. *Id.* From April 13, 2021, to April 22, 2021, the U.S. Department of Labor's ("DOL") Wage and Hour Division investigated Plaintiff's complaints and found that his allegations were "substantiated"; however, because BPD failed to respond to DOL, DOL merely "[a]dvised [Plaintiff] [as] to their right of private action." *Id.* ¶ 10; ECF No. 1-11 (Pl. Ex. C).

On October 18, 2022, Plaintiff submitted a formal grievance pursuant to Articles 11, 18, and 23[3] of the FY 2022–23 MOU between the City and CUB. ECF No. 1-1, ¶ 11; *see also* ECF No. 1-17 (Pl. Ex. F). Plaintiff then escalated the issue to the City's Comptroller, who referred the matter to BPD's human resources and payroll departments, but "no corrective action followed." ECF No. 1-1, ¶ 12.

In 2023 and 2024, Plaintiff submitted multiple written requests for payroll corrections, including requests for payroll audits and records in accordance with BPD "internal policy." *Id.* ¶

[3] Although the Complaint alleges that the grievance was submitted pursuant to Articles 11, 17, and 18, the Court relies on Exhibit F attached to the Complaint, which indicates that the grievance was submitted pursuant to Articles 11, 18, and 23. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails.").

7; *see also* ECF No. 1-12 (Pl. Ex. D); ECF No. 1-18 (Pl. Ex. G). These requests were either ignored or inadequately addressed. ECF No. 1-1, ¶¶ 7, 14. On January 17, 2024, the Maryland General Assembly's Office of Legislative Audits released a performance audit report of BPD. *Id.* ¶ 31; ECF No. 1-30 (Pl. Ex. P). The report "confirmed systematic payroll failures including lack of oversight, retroactive approvals, and uncategorized overtime that equally affected [sworn officers and] nonexempt civilian employees." ECF No. 1-1, ¶ 32.

On April 24, 2025, Plaintiff contacted CUB by email to seek "clarification and advocacy regarding the interpretation and application of payroll policies for hourly non-exempt employees, particularly in light of the [FLSA] and [BPD's] timekeeping and overtime directives." ECF No. 1-22 (Pl. Ex. H). In that communication, Plaintiff also stated that he had been accused of fraud "due to [his] early clock-ins," an allegation he "strongly contest[ed]." *Id.* Three days later, CUB responded to Plaintiff's email, writing that his request had been referred to CUB President Antoinette Ryan-Johnson. *Id.*; *see also* ECF No. 1-1, ¶ 26.

On May 8, 2025, CUB sent a letter to BPD indicating that Plaintiff requested a "Step 1 grievance meeting[]" and alleged that BPD violated Article 18 of an MOU between City Defendants and CUB. ECF No. 1-23 (Pl. Ex. I). A grievance report—"Grievance Report #14-25"—was issued the same day. *Id.*

On May 28, 2025, after "not receiv[ing] a substantive response or an acknowledgment of [his] concerns," Plaintiff emailed Ryan-Johnson directly to reiterate his request. ECF No. 1-1, ¶ 22; ECF No. 1-25 (Pl. Ex. K). He also wrote that Ryan-Johnson had one week to provide a substantive response to his email and to demonstrate a commitment to addressing the issues raised therein; otherwise, Plaintiff would "explore all available external remedies[,]" including "filing charges with the National [L]abor Relations Board (NLRB) . . . and/or [DOL]." ECF No. 1-25.

In June 2025, without any response from Ryan-Johnson, Plaintiff sent her a "final and unequivocal demand for [CUB] to fulfill its Duty of Fair Representation . . . to [him] and all affected members" regarding "the pervasive and long-standing wage theft by the [BPD]." ECF No. 1-1, ¶ 23; ECF No. 1-26 (Pl. Ex. L). Plaintiff did not hear from CUB or its President by the deadline he imposed. ECF No. 1-1, ¶ 23.

On June 17, 2025, BPD notified CUB via email, copying Plaintiff, that Plaintiff's requests for overtime were "denied," as the time he worked outside of his shift "was not authorized." ECF No. 1-1, ¶ 27; ECF No. 1-28 (Pl. Ex. N). This notice was a denial of grievance #14-25. *See* ECF No. 1-27 (Pl. Ex. M). CUB and BPD met on June 30, 2025, and discussed a second grievance filed on Plaintiff's behalf at some unknown point in time—grievance #15-25. *Id.* This grievance pertained to "equalization and distribution of overtime." *Id.* On July 1, CUB notified Plaintiff via email "[r]egarding grievance #14-25" stating that CUB found "no violation of the [MOU] between [CUB] and the Mayor and City Council of Baltimore . . . [and] therefore . . . f[ound] no reason to move t[hat] grievance any further." *Id.* According to Plaintiff, "[t]his denial failed to consider [his] non-exempt status and the applicability of federal wage law[.]" ECF No. 1-1, ¶ 25. In addition to notifying Plaintiff that it would not move forward with grievance #14-25, CUB informed Plaintiff that it had emailed BPD regarding the status of grievance #15-25 and would "act accordingly" based on the response it received. ECF No. 1-27. Neither the Complaint nor the exhibits attached to it indicate whether CUB received a response from BPD.

Following his repeated complaints to BPD, CUB, and external agencies, Plaintiff began to experience "hostile supervisory treatment, exclusions from meetings, and denial of training and overtime." ECF No. 1-1, ¶ 8. Although Plaintiff contacted "dozens of BPD supervisors, payroll and finance officials . . . , Comptroller staff . . . , [CUB] leaders . . . , and the [DOL][,]" all his

efforts "failed to produce corrective action." *Id.* ¶ 10. Even after Plaintiff exhausted "all internal and most external remedies[]," *id.* ¶¶ 17, 30, "Defendants continue to deny [Plaintiff] compensation for pre-shift work, early relief of prior shifts, and overtime due to short staffing," *id.* ¶¶ 16, 30. Such conduct affects "all Emergency Dispatchers" and other similarly situated employees in Plaintiff's bargaining unit. *Id.* ¶ 18.

## II. PROCEDURAL BACKGROUND

On September 22, 2025, Plaintiff filed a Complaint in this Court against City Defendants and CUB. ECF No. 1. On January 16, 2026, Plaintiff filed a Motion for Leave to Supplement Complaint pursuant to Federal Rule of Civil Procedure 15(d). ECF No. 5. City Defendants were served on February 18, and CUB was served on February 24. Their answers to the Complaint were due on March 11 and 17, respectively. On March 6, City Defendants filed a motion to extend the time to respond by sixty days, ECF No. 10, which the Court granted, ECF No. 11.

On March 24, Plaintiff requested that the Clerk enter default against CUB pursuant to Rule 55(a). ECF No. 14. On April 24, CUB responded in opposition to Plaintiff's request, ECF No. 17, and Plaintiff subsequently replied, ECF No. 23.

CUB and City Defendants each moved to dismiss Plaintiff's Complaint. ECF Nos. 18 & 20. Plaintiff responded in opposition to both motions, ECF Nos. 23 & 25, and Defendants subsequently replied in support of their respective motions, ECF Nos. 24 & 26. On July 1, Plaintiff moved for leave to file surreplies to arguments advanced in Defendants' reply briefs. ECF No. 29.

## III. PLAINTIFF'S MOTIONS

### A. Motions to Supplement

Plaintiff has filed multiple motions regarding supplementation of his Complaint. First, Plaintiff filed a "Motion to Supplement Reservation of Right to Supplement Exhibits and Expand

Relief" without attaching any proposed supplement. ECF No. 3. In this motion, Plaintiff requests a "reserv[ation] [of] the right to supplement [his complaint] with additional exhibits and factual allegations as further documentation becomes available." *Id.* This request is denied. Although the Federal Rules of Civil Procedure provide mechanisms for a party to amend and/or supplement their pleading, *see* Fed. R. Civ. P. 15, the Court cannot grant leave to amend or supplement without considering the proposed amendment or supplement.

Plaintiff also requests a "reserv[ation] of the right to seek relief on behalf of similarly situated nonexempt civilian employees affected by the same systemic payroll failures, misclassification practices, and retaliatory exclusion from corrective processes described herein." ECF No. 3. To the extent that Plaintiff is requesting a future opportunity to seek relief on behalf of similarly situated employees, that request is also denied, as *pro se* litigants "may not pursue relief on behalf of other individuals or [a] class of individuals." *Light v. Just.*, No. 2:20-CV-00443, 2023 WL 5005014, at *4 (S.D.W. Va. May 30, 2023) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)), *report and recommendation adopted*, 2023 WL 5002867 (S.D.W. Va. Aug. 4, 2023); *see also Myers v. Loudon Co. Pub. Sch.*, 418 F.3d 395, 400 (4th Cir. 2005) (citing *Oxendine*, 509 F.2d at 1407) ("The right to litigate for *oneself*, however, does not create a coordinate right to litigate for *others*.").

Second, Plaintiff separately filed a Motion for Leave to Supplement Complaint attaching several exhibits. ECF No. 5. Under Rule 15(d), "a party may file a supplemental pleading that relates to matters occurring subsequent to the filing of the initial complaint." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 411 (E.D. Va. 2011) (citing *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002)); *see also* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.”). “The court may permit supplementation even though the original pleading is defective in stating a claim or defense.” Fed. R. Civ. P. 15(d). Leave to supplement “should be freely granted, and [the motion] should be denied only where ‘good reason exists . . . , such as prejudice to the defendants.’” *Franks*, 313 F.3d at 198 n.15 (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)); *see also New Amsterdam Cas. Co. v Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963) (holding that Rule 15(d) motions are “[s]o useful . . . and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears[]”). Defendants do not oppose this motion.

Considering the Fourth Circuit’s liberal standard for supplementation, the Court grants Plaintiff’s Motion for Leave to Supplement Complaint. Plaintiff’s supplemental allegations include, *inter alia*, the following: (1) between September and October 2025, Plaintiff issued litigation-hold notices to Defendants directing each entity to preserve payroll, timekeeping, grievance, and disciplinary records relevant to this action, ECF No. 5, ¶ 4; (2) on or about October 19, 2025, Plaintiff’s request for a payroll audit was unilaterally closed and reclassified as a grievance, *id.* ¶ 6; (3) Plaintiff continues to experience payroll discrepancies and wage loss, *id.* ¶¶ 7, 9–11; and (4) City Defendants continue to violate the FLSA and MOU by not compensating employees for overtime work, *id.* ¶¶ 8, 11.

**B. Motion for Default as to CUB**

Plaintiff’s motion for entry of default against CUB is denied. Plaintiff argues that default should be entered against CUB because it missed its March 17, 2026, deadline to file an answer or responsive pleading in this matter and failed to request an extension of time. ECF No. 14. CUB argues that default should not be entered against it because (1) it intends to vigorously defend

against Plaintiff's claims, and the Fourth Circuit has recognized a "strong policy that cases be decided on the merits[,]" ECF No. 17 at 3 (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)); and (2) good cause exists to deny entry of default, *id.* at 3–4. According to CUB, its delay resulted from "its internal institutional challenges and limited resources[]" as a union representing "thousands of blue-collar Baltimore City employees" and funded exclusively by its members. *Id.* The Court finds CUB's delay in filing to be minor and supported by good cause and excusable neglect. *See* Fed. R. Civ. P. 6(b)(1). Moreover, a default should be entered only when a defendant fails to defend against the claims asserted against it. *See* Fed. R. Civ. P. 55(a). Here, CUB has filed a motion to dismiss, presenting an active defense against this suit. And the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted).

**C. Motion for Leave to File Surreply**

Plaintiff seeks leave to file surreplies in opposition to the defendants' motions to dismiss. ECF No. 29. Surreplies are generally not permitted, but a court may allow a party to file a surreply in its discretion. *Franklin v. Cleo AI Inc.*, 741 F. Supp. 3d 300, 305 (D. Md. 2024) (citation omitted), *aff'd*, No. 24-1817, 2025 WL 1540924 (4th Cir. May 30, 2025); *see also* Loc. R. 105.2(a) (D. Md. 2025) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). "This discretion is typically exercised to allow parties to respond to new matters raised for the first time in the opposing parties' reply briefs." *Franklin*, 741 F. Supp. 3d at 305 (citation omitted). Here, Plaintiff's request for leave to file surreplies is unopposed, and the Court find the surreplies responsive to a limited set of points raised for the first time in the defendants' reply briefs. Plaintiff's motion is granted.

## IV. STANDARD OF REVIEW FOR MOTIONS TO DISMISS

### A. Rule 12(b)(1)

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge . . . or a factual challenge." *Id.* (citation modified). A facial challenge "assert[s] that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A defendant's facial challenge "will be evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true . . . ." *Est. of Jones v. Md. Dept. of Pub. Safety*, Civ. No. JRR-21-01889, 2024 WL 493269, at *2 (D. Md. Feb. 8, 2024) (citing *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009), and *Trump*, 416 F. Supp. 3d at 480). A factual challenge, on the other hand, asserts "that the jurisdictional allegations of the complaint are not true." *Trump*, 416 F. Supp. 3d at 479 (citation modified) (quoting *Kerns*, 585 F.3d at 192). In a factual challenge, the court "is entitled to decide disputed issues of fact with respect to subject matter jurisdiction. . . . In that circumstance, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citation modified).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion

to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable, and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to

reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Ordinarily, "a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, courts may "consider documents that are explicitly incorporated into the complaint by reference," documents "attached to the complaint as exhibits," or "document[s] submitted by the movant that w[ere] not attached to or expressly incorporated in a complaint, so long as [they] w[ere] integral to the complaint and there is no dispute about [their] authenticity." *Goines*, 822 F.3d at 166 (citations omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Id.* (quoting *Fayetteville Invs.*, 936 F.2d at 1465). Additionally, "courts may take judicial notice of publicly available records without converting a motion to dismiss to a motion for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 503 (D. Md. 2019); *see also Corbitt v. Balt. City Police Dep't*, 675 F. Supp. 3d 578, 583 n.5 (D. Md. 2023) (citation omitted) ("On a motion to dismiss, a court may take judicial notice of matters of public record.").

"[*P*]*ro se* filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court must "construe [*pro se*] pleadings liberally." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 592 U.S. 1264 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff'"; rather, the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th

Cir. 2006) (en banc)). Thus, a pro se complaint "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (citation modified) (quoting *King*, 825 F.3d at 212, 214).

## V. CUB'S MOTION TO DISMISS

CUB moves to dismiss the sole claim asserted against it in the Complaint—Count III for breach of the duty of fair representation—for lack of subject-matter jurisdiction and failure to state a claim. ECF No. 18.

In Count III, Plaintiff alleges that CUB "breached its duty of fair representation by not advocating for Plaintiff and similarly situated civilian employees[] despite straightforward evidence of payroll mismanagement and wage violations." ECF No. 1-1, ¶ 60. Plaintiff further asserts that CUB's "silence and refusal to pursue corrective action for [some] civilian employees while others received relief constitutes arbitrary and discriminatory conduct in violation of its statutory obligations." *Id.* In a supplement to the Complaint, Plaintiff also alleges that CUB breached a collective bargaining agreement related to his employment, ECF No. 1-3 at 2, which the Court understands exists between CUB and the City, ECF No. 1-1, ¶¶ 1–2. Construing Plaintiff's *pro se* filings liberally, the Court understands Count III to assert that CUB breached its duty of fair representation in connection with the collective bargaining agreement governing Plaintiff's employment. Plaintiff identifies the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, as the jurisdictional basis for Count III. ECF No. 1-3 at 2.

"Congress enacted the LMRA in 1947 as an amendment to the National Labor Relations Act ('NLRA')." *Alston v. Balt. Gas & Elec. Co.*, Civ. No. ELH-22-1061, 2023 WL 1472020, at *9 (D. Md. Feb. 1, 2023) (citing *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 754–55 (1988)). In doing so, it "establish[ed] a statutory framework for labor disputes and, in § 301 [of the LMRA],

authoriz[ed] suits for" violations of contracts between employers and labor unions. *Washington v. Giant of Md. LLC*, Civ. No. PWG-13-2599, 2015 WL 518573, at *2 (D. Md. Feb. 6, 2015) (citing 29 U.S.C. § 185), *aff'd*, 610 F. App'x 253 (4th Cir. 2015); *see also* 29 U.S.C. § 185. Section 301 also authorizes suits against labor unions. *Kosa v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 784 F. App'x 406, 412 (6th Cir. 2019); *see also* 29 U.S.C. § 185.

Because labor unions serve as the exclusive bargaining representatives of employees, the Supreme Court has held that federal labor law imposes upon unions a duty of fair representation. *Snead v. Bd. of Educ. of Prince George's Cnty.*, 815 F. Supp. 2d 889, 896 (D. Md. 2011) (citing *14 Penn Plaza, LLC v. Pyett,* 556 U.S. 247, 271 (2009)); *see also Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *Crenshaw v. Allied Chem. Corp.*, 387 F. Supp. 594, 599 (E.D. Va. 1975) (citations omitted) ("[T]he [Supreme] Court has . . . created a doctrine, the duty of fair representation, which subjects the union to an obligation to deal rationally, fairly, and honestly with the employees it represents."). A union breaches this duty "when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Snead*, 815 F. Supp. 2d at 896 (quoting *14 Penn Plaza*, 556 U.S. at 271).

"The LMRA applies only to private-sector labor relations[,]" however. *United Elec., Radio & Mach. Workers of Am. v. W. Va. Pub. Workers Loc. 170*, No. 2:24-CV-00469, 2025 WL 970412, at *2 (S.D.W. Va. Mar. 31, 2025). The Act's text confirms this limitation. Section 301 provides that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). In this context, "employer" means "any person acting as an agent of an employer, directly or indirectly, but *shall not include* . . . any State or political subdivision thereof[.]" 29 U.S.C. § 152(2) (emphasis added). An "'employee' . . . *shall not include* any individual employed . . . by any other person who is not an employer as herein defined." 29 U.S.C. § 152(3) (emphasis added). A "labor organization," in turn, is "any organization of any kind . . . in which [covered] employees participate and which exists for the purpose, in whole or in part, of dealing with [covered] employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 152(5). Taken together, these definitions[4] make clear that the LMRA does not apply to public-sector employers or employees, nor does it extend to labor organizations that exclusively represent public-sector employees or bargain with public-sector employers. *Adams v. Am. Fed'n of State*, 167 F. Supp. 3d 730, 741 (D. Md. 2016).

Here, it is undisputed that CUB is a "public-sector union." ECF No. 18-1 at 1; *see generally* ECF No. 23. Indeed, the Complaint appears to recognize CUB as such. *See* ECF No. 1-1, ¶ 62. And "[t]he Baltimore City Code . . . lists the 'Baltimore City Police Department' as an agency of Baltimore City." *Corrigan v. Balt. Police Dep't*, Civ. No. ELH-24-03497, 2026 WL 73800, at *26 (D. Md. Jan. 9, 2026) (citing Balt., Md. Code art. 1 § 5-1(b)(2)(iii)). Because BPD is not an "employer," Plaintiff is not an "employee," and CUB is not a "labor organization" within the meaning of the LMRA, Plaintiff fails to state a claim for breach of duty of fair representation under § 301. And because § 301(a)'s language "strongly suggests that its requirements are necessary to confer subject-matter jurisdiction on the federal courts[,]" Plaintiff's failure to state a cognizable claim under § 301 deprives this Court of subject-matter jurisdiction. *See Granite Rock Co. v. Intl.*

---

[4] Because the LMRA expressly provides that the terms "employer," "employee," and "labor organization" "shall have the same meaning as when used in" the NLRA, *see* 29 U.S.C. § 142(3), the Court applies the definitions set forth in the NLRA.

*Broth. of Teamsters*, 546 F.3d 1169, 1176 (9th Cir. 2008), *aff'd in part, rev'd in part on other grounds*, 561 U.S. 287 (2010) ("[A] failure to state a claim under [§] 301(a) of the LMRA is a defect in subject-matter jurisdiction[.]"). Accordingly, Count III is subject to dismissal for lack of subject-matter jurisdiction and failure to state a claim for relief.

Plaintiff argues, *inter alia*, that CUB should not be permitted to raise an untimely defense and that "CUB's jurisdictional defenses are waived by operation of Rule 12(h)(1)." ECF No. 23 at 2, 8–9. He further argues that CUB should not be allowed "to benefit from the Clerk's administrative delay" in entering default, and therefore its motion should be denied. ECF No. 23 at 1–2, 6–8. This argument fails.

"Subject-matter jurisdiction cannot be conferred by the parties, nor can a defect in subject-matter jurisdiction be waived by the parties. . . . Accordingly, questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) (citation omitted). As Plaintiff acknowledges in his opposition brief, subject-matter jurisdiction is an exception to Rule 12(h)'s waiver rule. *See* Fed. R. Civ. P. 12(h)(3).

Although CUB's motion was filed more than 21 days after service was executed, it is well settled that "[a]ny party may raise a subject matter jurisdiction issue at any stage of the litigation." *Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, Civ. No. TDC-14-1451, 2015 WL 5829726, at *1 (D. Md. Oct. 2, 2015) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). Rule 12(h)(3) requires a federal court to dismiss a claim at any point it determines it lacks subject-matter jurisdiction over it. Furthermore, as Plaintiff proceeds *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B) authorizes dismissal *sua sponte* for any failure by Plaintiff to state a plausible claim for relief. In short, the Court need not rely on CUB's motion in its dismissal of Count III.

Lastly, Plaintiff argues that the Court has supplemental jurisdiction over his claim for duty of fair representation against CUB, as that claim arises from the same nucleus of operative facts as his federal claims against City Defendants under the FLSA and § 1983. ECF No. 23 at 11–12. "[T]he supplemental-jurisdiction statute authorizes a federal court to hear state-law claims that, independently, would not satisfy subject matter jurisdictional requirements, provided the overall action contains at least one claim that does satisfy the requirement or original jurisdiction." *Vick v. Nash Hosps., Inc.*, 756 F. Supp. 2d 690, 692 (E.D.N.C. 2010) (citing 28 U.S.C. § 1367(a)). However, a federal court may "decline to exercise supplemental jurisdiction . . . where the court dismisses the claims over which it has original jurisdiction." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) (citing 28 U.S.C. § 1367(c)). In his opposition brief, Plaintiff refers to his claim against CUB as a "state-law" claim. ECF No. 23 at 11. But the Complaint cites 29 U.S.C. § 185 as the basis for its claim against CUB for breach of the duty of fair representation, ECF No. 1-3 at 2, and it recognizes CUB as "the exclusive bargaining representative for Plaintiff's bargaining unit," ECF No. 1-1, ¶ 53. Plaintiff cannot use his response in opposition to CUB's motion to dismiss to amend his pleadings. *See Butrim v. Mayor of Balt.*, 821 F. Supp. 3d 509, 527 n.6 (D. Md. 2026) (citations omitted). To the extent that Count II is founded upon state law and not federal law, the Court declines to exercise supplemental jurisdiction over it.

As explained in Part VI *infra*, Plaintiff's federal-law claims against City Defendants are all subject to dismissal. In the circumstances of this case, principles of judicial efficiency and comity weigh against this Court's exercise of supplemental jurisdiction over any remaining state-law claims. *See Bishop v. Cnty. of Macon*, 620 F. App'x 148, 150 (4th Cir. 2015) ("In deciding whether to exercise supplemental jurisdiction, a court should consider 'the values of judicial economy,

convenience, fairness, and comity.'" (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988))).

For the foregoing reasons, CUB's motion to dismiss is granted, and Count III is dismissed.

## VI. CITY DEFENDANTS' MOTION TO DISMISS

### A. Count I

In Count I of the Complaint, Plaintiff alleges that City Defendants violated the FLSA by failing to (1) provide him with "proper compensatory time in lieu of overtime pay," (2) "credit or track comp time balances," and (3) properly account for night differentials in overtime calculations. ECF No. 1-1, ¶¶ 36–39, 42; ECF No. 1-3 at 1.

"The [FLSA] . . . requires covered employers to pay their employees both a minimum wage and overtime pay[.]"[5] *Hall v. DIRECTV, LLC*, 846 F.3d 757, 761 (4th Cir. 2017) (citing 29 U.S.C. §§ 206, 207). In cases involving an FLSA overtime claim, such as here, the Fourth Circuit has explained that a plaintiff can avoid dismissal under Rule 12(b)(6) only where the plaintiff has "provide[d] sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours." *Id.* at 777. "Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." *Id.* (citations omitted). Although this standard "does not require plaintiffs to identify a *particular* week in which they worked uncompensated overtime hours[,]" it does require plaintiffs to "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they

[5] BPD's status as an FLSA-covered employer is uncontested. *See Alderman v. Balt. City Police Dep't*, 952 F. Supp. 256, 259 (D. Md. 1997); *see generally* ECF No. 20-1.

worked more than forty hours in a given week." *Id.* (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). "A plaintiff may meet this initial standard 'by estimating the length of h[is] average workweek during the applicable period and the average rate at which []he was paid, the amount of overtime wages []he believes []he is owed, *or any other facts* that will permit the court to find plausibility.'" *Id.* (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26, 2015)).

Here, Plaintiff merely alleges that he "often worked" "voluntary overtime," ECF No. 1-1, ¶ 5, and that he was denied overtime as a form of retaliation for complaining to BPD's payroll department, *id.* ¶ 8. The Complaint is notably devoid of any "detail[s] about the length and frequency of [Plaintiff's] unpaid work." *Hall*, 846 F.3d at 777 (quoting *Nakahata*, 723 F.3d at 201). The Court therefore finds that Plaintiff's allegations do not provide the level of factual content necessary to "'nudge' [an FLSA overtime] claim 'from conceivable to plausible.'" *Id.* (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). Accordingly, Count I must be dismissed.

**B. Count II**

In Count II of the Complaint, Plaintiff alleges that BPD breached several MOUs negotiated between the City and CUB and certain provisions of BPD's Payroll Manual "by misapplying the hourly rate divisor, undervaluing vacation leave, excluding night differentials from overtime, and denying compensatory time." ECF No. 1-1, ¶¶ 44–45. As with Count III, discussed in Part V *supra*, the only jurisdictional basis Plaintiff identifies for the claim asserted in Count II for breach of a collective bargaining agreement is the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ECF No. 1-3 at 2. As explained in Part V, however, this federal statute "applies only to private-sector labor relations." *United Elec., Radio & Mach. Workers of Am.*, 2025 WL 970412,

at *2. "[P]ublic employers are not covered." *Snead*, 815 F. Supp. 2d at 896; *see also* 29 U.S.C. § 152(2) (excluding from the definition of "employer" "any State or political subdivision thereof"); 29 U.S.C. § 152(3) (excluding from the definition of "employee" "any individual employed . . . by any other person who is not an employer as herein defined"). The statute has been interpreted to permit a "so-called hybrid § 301 action," where a plaintiff may bypass contractual remedies to sue an employer for breaching a collective bargaining agreement and, at the same time, sue the union for breaching its duty of fair representation. *Groves v. Commc'n Workers of Am.*, 815 F.3d 177, 178–79 (4th Cir. 2016); *see also Sewell v. Int'l Longshoremen's Ass'n*, *Loc. No. 333*, Civ. No. SKG-12-00044, 2013 WL 1316098, at *4–5 (D. Md. Mar. 27, 2013). In such an action, "[t]he claims against the employer and the union are 'interlocked,' meaning 'neither claim is viable if the other fails[.]'" *Bailey v. Wash. Metro. Area Transit Auth.*, Civ. No. GJH-19-2540, 2020 WL 3259081, at *3 (D. Md. June 16, 2020) (quoting *Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)). And the federal court will "review allegations against employers for breach of collective bargaining agreements *only* when an employee has first proved that the union representing him breached its duty of fair representation." *Thompson*, 276 F.3d at 657 (citing *Vaca*, 386 U.S. at 186).

Count II is subject to dismissal. As explained in in Part V, Plaintiff fails to state a plausible claim against CUB for breach of the duty of fair representation under 29 U.S.C. § 185. Any corresponding "hybrid" claim against City Defendants for breach of a collective bargaining agreement likewise fails. *See Thompson*, 276 F.3d at 657; *Bailey*, 2020 WL 3259081, at *3; *Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 250 (S.D.N.Y. 2014) (holding that dismissal of the plaintiff's duty-of-fair-representation claim required dismissal of the related LMRA § 301 breach-

of-contract claim). Moreover, the public-sector relationship between Plaintiff and City Defendants is not covered by the federal statute. *See Snead*, 815 F. Supp. 2d at 896.

To the extent that Plaintiff intends to base his contractual claim against City Defendants on state law, the Court declines to exercise supplemental jurisdiction over it. As explained in Part VI.A *supra* and Part VI.C *infra*, Plaintiff's federal claims are all subject to dismissal, and, in this case, principles of judicial economy and comity weigh against this Court's exercise of supplemental jurisdiction over any remaining claims founded solely on state law. *See ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) (citing 28 U.S.C. § 1367(c)) ("Section 1367(c) recognizes courts' authority to decline to exercise supplemental jurisdiction in limited circumstances, including . . . where the court dismisses the claims over which it has original jurisdiction."); *Bishop*, 620 F. App'x at 150 ("In deciding whether to exercise supplemental jurisdiction, a court should consider 'the values of judicial economy, convenience, fairness, and comity.'" (quoting *Carnegie–Mellon,* 484 U.S. at 350)).

City Defendants' motion to dismiss is granted as to Count II.

**C. Count IV**

Plaintiff asserts a claim for retaliation in Count IV of the Complaint. He alleges that, "by submitting payroll correction forms, filing grievances, requesting audits, . . . contacting oversight agencies [such as] the [DOL][,]" and raising other concerns internally at BPD, he "engaged in protected activity under the [FLSA] . . . and Maryland wage law." ECF No. 1-1, ¶¶ 64–65. He further alleges that City Defendants violated the FLSA and Maryland wage law by retaliating against him for asserting his wage rights. *Id.* ¶¶ 40, 66–68; ECF No. 1-3 at 1.

"The FLSA prohibits a covered employer from 'discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint . . . under

or related to [the FLSA's provisions].'" *Thomas v. Ecology Servs. Anne Arundel Cnty., LLC*, Civ. No. ABA-23-02424, 2025 WL 2097501, at *4 (D. Md. July 25, 2025) (quoting 29 U.S.C. § 215(a)(3)). "A plaintiff asserting a prima facie claim of retaliation under the FLSA must show that (1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008) (citations omitted). City Defendants primarily argue that Plaintiff fails to plead a plausible adverse action and a "chain of causation between protected conduct and employer response." ECF No. 20-1 at 17.

To "demonstrate a causal connection or nexus between the employee's protected action and the employer's retaliatory employment decision[,] . . . a plaintiff can either show a temporal proximity between the protected activity and adverse action, or that other relevant evidence indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). Additionally, "[t]o establish a causal connection between a protected activity and an adverse action, a plaintiff must prove that the protected activity preceded the adverse action and that the employer knew the employee engaged in a protected activity." *Gibson v. Marjack Co.*, 718 F. Supp. 2d 649, 655 (D. Md. 2010) (citations omitted). Specifically, "a plaintiff must show that the decisionmaker was aware of the protected activity at the time the alleged retaliation occurred." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021) (citation omitted). "[C]onstructive knowledge is not sufficient[;] . . . actual knowledge is required." *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022) (citing *Roberts*, 998 F.3d at 125). "Thus, where a relevant decisionmaker is unaware of any prior complaints, a plaintiff 'cannot

establish the necessary causal connection between [her] filing a complaint . . . and [her] termination.'" *Roberts*, 998 F.3d at 124 (citation omitted).

Here, Plaintiff alleges that "[a]fter repeated complaints to payroll, union representatives, and external agencies, [he] experienced . . . hostile supervisory treatment, exclusions from meetings, denial of trainings and overtime[,]" "excessive monitoring, targeted disciplinary and time keeping enforcement[,] and reputational harm." ECF No. 1-1, ¶¶ 8, 40, 66–67. He further alleges that, in May 2025, he suffered retaliation when BPD personnel "wrongfully accused [him] of time fraud for early clock-ins[.]" *Id.* ¶¶ 15, 40, 66. This action came after Plaintiff "filed a comprehensive grievance detailing FLSA violations, payroll-policy breaches, and system wage theft across all shifts[]" in April 2025. *Id.* ¶ 15.

Plaintiff fails to allege a plausible causal connection between any of his protected activities and any materially adverse action taken by BPD. First, Plaintiff fails to identify the approximate points in time when he took certain protected activities and when he suffered adverse actions from BPD, which undermines any reasonable inference of causation based on temporal proximity. Second, even when Plaintiff provides relevant timeframes, he fails to identify the person within BPD responsible for the adverse action or any other information that may support a reasonable inference of causation. Although Plaintiff alleges sufficient temporal proximity between a "comprehensive grievance" Plaintiff filed in April 2025 and allegedly false accusations of time fraud made against him in May 2025, he fails to allege who accused him of time fraud and fails to present any other facts to suggest that the person who made that accusation was aware of Plaintiff's grievance. Without facts to support a reasonable inference that Plaintiff was falsely accused of time fraud by someone who was aware of his protected activity, he fails to state a plausible retaliation claim. *See Kennedy v. McHugh*, Civ. No. CCB-13-390, 2013 WL 4541404, at *2 (D.

Md. Aug. 23, 2013), *aff'd sub nom. Kennedy v. Dep't of the Army*, 554 F. App'x 248 (4th Cir. 2014) (dismissing retaliation claim for plaintiff's failure to show causal connection or employer's knowledge of his protected activity); *Marshall v. Marshall's TJX Cos., Inc.*, Civ. No. WMN-15-555, 2015 WL 7754367, at *3 (D. Md. Dec. 2, 2015) (dismissing retaliation claim in part because there was "no information in the Complaint" suggesting that the decisionmaker was aware of Plaintiff's prior complaints of discrimination); *Ragin v. Hegseth*, Civ. No. MJM-24-3365, 2026 WL 860525, at *12 (D. Md. Mar. 30, 2026) (noting that the amended complaint "does not contain any facts to support a reasonable inference that the decisionmaker behind the termination notice was aware of Plaintiff's complaints").

For the foregoing reasons, Count IV shall be dismissed.

**D. Count V**

In Count V of the Complaint, Plaintiff alleges that City Defendants violated the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*, by failing to pay him for "pre- and post-shift work, den[ying] [him] proper compensatory time, miscalculat[ing] hourly rates, and exclud[ing] night differentials from overtime calculations[,]" which "resulted in unpaid earned wages." ECF No. 1-1, ¶¶ 4, 6, 13, 73–74.

The MWPCL is a "vehicle[] for recovering . . . unlawfully withheld overtime wages." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625–26 (Md. 2014). But the statute does not subject all employers to liability for unpaid wages. The term "employer" as used in the MWPCL applies only to a "person who employs an individual in the State or a successor of the person." Md. Code Ann., Lab. & Empl. § 3-501(b). The MWPCL does not apply to employers that are governmental entities. *See Strange v. Prince George's Cnty.*, Civ. No. TDC-19-2761, 2020 WL 4350373, at *3 (D. Md. July 29, 2020) (finding that the Maryland General Assembly "did not

intend for the overtime requirements to apply to governmental employers"); *Crystal v. Batts*, Civ. No. JKB-14-3989, 2015 WL 5698534, at *11 n.6 (D. Md. Sept. 25, 2015) (citation omitted) ("BPD is not an 'employer' within the meaning of the [MWPCL][.]"); *Carter v. Mayor of Balt.*, Civ. No. WMN-07-3117, 2009 WL 10682095, at *3 (D. Md. June 18, 2009) ("[T]he City is not an 'employer' under the . . . MWPCL."). Because Plaintiff's MWPCL claim is against governmental entities, which are not covered under the statute, it must be dismissed.[6]

## VII. CONCLUSION

For the foregoing reasons, CUB's Motion to Dismiss (ECF No. 18) and City Defendants' Motion to Dismiss (ECF No. 20) are granted, and the Complaint is dismissed without prejudice. Plaintiff's "Motion to Supplement Reservation of Right to Supplement Exhibits and Expand Relief" (ECF No. 3) is denied. His Motion for Leave to Supplement Complaint (ECF No. 5) and Motion for Leave to File Surreplies (ECF No. 29) are granted. Plaintiff Request for Clerk's Entry of Default (ECF No. 14) is denied.

A separate Order will issue.

September 25, 2026
Date

/S/
Matthew J. Maddox
United States District Judge

[6] Even if Plaintiff stated a plausible claim against City Defendants in Count V, the Court would decline to exercise supplemental jurisdiction over it, for reasons explained in Parts V and VI.B *supra*.